And so is there a brief submitted in opposition? There's not, Your Honor. This is an ex parte case. There was a proposed amicus brief that was filed, as well as a response, but there is no appellee and no appellee's brief.  Does Dynadot, do they even know that this proceeding is taking place? To my knowledge, no, Your Honor, Dynadot, unless they have looked it up, they would not have caused to know at this juncture.  Okay. May it please the Court, my name is Joe Oliveri on behalf of Appellant Applicant Gregory Gliner. Your Honors, this appeal arises from the District Court's denial of Mr. Gliner's application for discovery under 22 U.S.C. 1782 in a one-paragraph order without considering any of the applicable statutory elements or discretionary factors. Instead, the District Court denied the application based on potential First Amendment concerns that are not applicable under the facts of this case. So has Dynadot made any objections to the application? No, Your Honor, they have not. Has it, it's not even been served on Dynadot? It has not even been served yet. The District Court denied this at the ex parte stage. At this stage, we came into court, made the application. Generally, what the District Court will do, if the statutory factors are satisfied and the discretionary intel factors weigh in favor of granting the application, they will grant the application, at which point the subpoena, we will serve the subpoena on Dynadot. They will inform the relevant parties, presuming that they know them, and they have an opportunity, either those parties or Dynadot, if they wish to, to come in and move to Quash. So we didn't even make it to that stage, Your Honors. Pardon me, Mr. Oliveria, I believe that Judge Dynadot said that he was exercising his discretion. Do you know what that discretion was or on what it was based? Sure. In this case, Judge Bea, the District Court held or stated that it denied the application not because of any of the intel factors, but because, quote, it does not address why disclosure of the publisher's identity could be justified or appropriate in light of their First Amendment interests. Of whose First Amendment interests? The unknown publisher is what the district judge said. So in this case, however, in this case, however, the unknown publishers, we have every reason to believe that they are non-U.S. citizens outside of the United States who did not target a U.S. audience with their speech. So under the USAID case, they would have no First Amendment rights. Well, in view of the long tradition of anonymous writing, starting with the Federalist Society, Federalist Papers, doesn't the American public that reads political lore, which is the website, have a right for anonymous speech? Your Honor, this Court has held, and this goes directly to the Thunder Studios case, where in certain instances a U.S. audience certainly has a right, a First Amendment right, to receive information. But that information or that speech has to be directed to them. The mere fact that information or speech is on a website on the World Wide Web does not mean that it was targeted into the United States. And this doctrine goes back through substantial Supreme Court precedent, back to the 1960s and even earlier, in cases like Lamont v. Postmaster, where U.S. citizens were held to have a right to receive communist material sent from abroad. Certainly the people abroad didn't have that First Amendment right, but because it was targeted to a United States audience, they were able to have a right to receive that. Well, can't we take judicial notice that Americans read the website? Your Honor, Americans may in fact read the website, but by that logic, every website that is out there on the Internet that any American reads would suddenly be clothed with First Amendment protection. And this Court has specifically recognized that not all material on the Internet is solely by virtue of its universal accessibility expressly aimed at every state in which it's received. So under that precedent here, it would — Well, you say this Court has recognized that not all material on the website has this anonymous right? Can you cite me that case? It's the Marvix Photo v. Brand Text case, 647 F. 3rd, 1218. That case arose in the context of personal jurisdiction and whether there was targeting at the state. Can the Court recognize that just because material is on the Internet out there and accessible does not mean that it is directed at the state? And the same principle applies here where, yes, the information or the defamatory article here is accessible everywhere worldwide because that's the nature of the Internet. It was not directed into the United States so as to clothe the audience with putative or potential First Amendment rights. I gather all of these issues could be ferreted out if the subpoena were to issue. That's absolutely right, Judge Paez. That subpoena would be served on Dynadot. Dynadot could file a motion to quash on the basis that this is infringing upon First Amendment rights of the potential author of whoever the author was of the article and the website. Is that right? That's absolutely correct, Judge Paez, because that's why these are considered ex parte in the first instance, because that is premised on the fact that any interested party or subpoena recipient has the opportunity to move to quash anonymously through counsel if they prefer and to raise any potentially applicable First Amendment rights or other rights. What's in the record? What do you know or what have you learned about the website? So the website bears all the characteristics of a Russian disinformation website. The reasons are almost all of the article is Russian centric. Poor English, anti-Western rhetoric. The source code for the website links to Russian language social media and the sample page for the website is all Russian language. We have every reason to believe that this website, the publishers are outside of the United States. But again, as you recognize, they would have an opportunity, if that's not the case, to come in and present any First Amendment rights in a motion to quash, which fits with general privilege law in that the person asserting a First Amendment privilege bears the burden of demonstrating that it applies. Let me ask you this. What case do you think best lays out the position that you take in your brief? Your Honor, I think there are a number of cases that do exactly that. At the circuit level. So I think the Not district court. That's right. So at the circuit level, in terms of First Amendment rights for potential, I would say, you know, the USAID from the Supreme Court there, in terms of Section 1782 cases, there's not a lot of circuit precedent out there. Primarily, the overwhelming majority of the cases across the country are in the Northern District of California because of the tech sector and all of the places there. So I think those cases have been pretty uniform in how they've handled this. And again, we cite a lot of those cases in the brief, the Hay, the Takada, the Takagi cases, and so on and so forth. And I think, again, it's very important that we not put the cart before the horse here, as respectfully the district court did. Had it been concerned about potentially applicable First Amendment rights, the proper course was, as courts do, like the Anahara case and others, is to grant the application without prejudice to any arguments that may be raised in a motion to quash. So what we really think the district court did in overstepping here is assume the applicability of the First Amendment privilege and quash the superior or deny the application on that basis alone, when, from all intents and purposes, every — it doesn't appear that it would apply. Remind me the position that the ACLU took in their amicus brief. So the ACLU, Judge Bea, said that in circumstances like this, they want to apply the test from a high-fields capital management where a party would have to demonstrate a prima facie case on the merits by providing a real evidentiary basis for the claim. No courts have done that in the 1782 context. The ACLU cited a couple cases. They contended that did that. Those cases were all repudiated, and for good reason. The Supreme Court, in the Intel decision interpreting this statute, expressly rejected as, quote, fraught with danger the lone dissenter's position that a 1782 application should be denied if the discovery wouldn't be available under domestic law in analogous circumstances. The Highsmith test could be applied on a motion to quash. It could be, Your Honor. Our position here is that it should not be, because it's inconsistent. Applying that overlay is inconsistent with the Supreme Court's interpretations of 1782 and the very purpose of 1782, which is encouraging reciprocal assistance from foreign courts and foreign governments, and imposing additional hurdles to discovery that are not tethered to the statute or the Supreme Court's interpretation of it would frustrate that policy goal. The ACLU wanted to use 1782 to pursue a different policy goal, which is promoting speech abroad, and that's a matter for Congress, not the courts. With that, Your Honors, I see I'm just about out of time. I would ask that the Court reverse the district court's ruling, and if I may, if it is possible to expedite consideration, we have a case pending, a defamation case pending underlying this in the United Kingdom. We have a March 31st deadline to serve the putative defendant. We're moving the English court for an extension of that deadline, but it's not guaranteed, and the English court is just waiting on the American courts to act. Thank you, Your Honors. Okay. Thank you very much, Mr. Oliveri. Ex parte application of Gregory Gleiner is submitted.
judges: WARDLAW, PAEZ, BEA